United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 5, 1998   Decided December 22, 1998

No. 98-7037

Winnie Tunison,

Appellee

v.

Continental Airlines Corporation, Inc.,

Appellant

Appeal from the United States District Court

for the District of Columbia

(No. 96cv02554)

John Longstreth argued the cause for appellant.  With him on the briefs was William Gray Schaffer.

Sunil H. Mansukhani argued the cause for appellee.  With him on the brief was Douglas L. Parker.

Before:  Silberman, Sentelle and Henderson, Circuit Judges.

Opinion for the court filed by Circuit Judge Sentelle.

Sentelle, Circuit Judge: Winnie Tunison, who is blind and deaf, filed this action in the United States District Court for the District of Columbia, alleging that Continental Airlines ("Continental"), by refusing to allow her to fly alone, violated the Air Carrier Access Act, 49 U.S.C. s 41705 ("ACAA"), and pursuant regulations. The jury found that Continental had violated the Act, but awarded Tunison no damages. The district court entered an empty judgment in Tunison's favor, and awarded her costs. Continental appeals from the award of costs, arguing that because Tunison received no relief, she should not be considered a prevailing party for the purposes of awarding costs under Fed. R. Civ. P. 54(d)(1), and that because she refused a pretrial offer of judgment more favorable than her ultimate award, under Fed. R. Civ. P. 68, Tunison should be required to pay Continental's post-offer costs. We hold that because Tunison obtained no relief under the judgment, and Continental was found to have violated the Act, neither party should be considered a prevailing party presumptively entitled to costs under Rule 54(d)(1). However, we agree with Continental that the offer of judgment Tunison rejected was more favorable than the judgment she ultimately obtained. Accordingly, we reverse the award of costs to Tunison and remand the case to the district court for an award of Continental's allowable post-offer costs.

## I. Background

Winnie Tunison is a forty-two-year-old blind and deaf woman who is a wife, mother, college student and motivational speaker. She is able to communicate by touching the hands of a person performing sign language, or by having letters traced in her palm. According to Tunison, she regularly travels by air alone without difficulty.

In August 1996, Ms. Tunison scheduled air travel on Continental Airlines for a round trip between Washington, D.C. and Providence, with a change of planes in Newark. The initial leg, from D.C. to Newark, was uneventful. Tunison received the safety instructions through letters traced on her palm, and traveled unaccompanied. After changing planes in

Newark with the assistance of a Continental employee, Tunison was again given the safety instructions, this time by a Continental employee who knew sign language. Although Ms. Tunison had understood the safety instructions, the pilot and flight crew, after consulting Continental manuals, did not feel comfortable allowing her to travel unaccompanied. The flight was delayed while flight personnel came to Tunison's seat on the plane and asked her to get off the plane and wait until they could find someone to fly with her. When Tunison refused, Continental found an off-duty flight attendant to accompany her.

Ms. Tunison claims that she was humiliated and embarrassed by this episode, which took place in front of the other passengers. She did not want to make the return flight if she would be required to have an attendant. Accordingly, before her return flight, her daughter spoke by telephone to a Continental employee, who told her that Tunison would be allowed to fly home alone. However, when Tunison arrived at the airport, she was met by a Continental gate agent, who accompanied her all the way back to Washington, D.C.

Ms. Tunison sued alleging that Continental's actions violated the Air Carrier Access Act, 49 U.S.C. s 41705,1 and

_____

1 The statute provides that:

In providing air transportation, an air carrier may not discriminate against an otherwise qualified individual on the following grounds:

(1) the individual has a physical or mental impairment that substantially limits one or more major life activities.
(2) the individual has a record of such an impairment.
(3) the individual is regarded as having such an impairment.

49 U.S.C. s 41705 (1998).

This court has not previously addressed whether there is an implied private right of action under the ACAA, and the issue is not before us in this case. The court below "presumed" there was a private right of action under the ACAA given holdings to that effect in the 5th and 8th Circuits and Continental's failure to argue to the contrary. See Shinault v. American Airlines, Inc., 936 F.2d 796,

pursuant regulations which limit the situations in which individuals may be required to have an attendant.2 She sought compensatory damages for the emotional distress she suffered as a result of Continental's actions, as well as punitive damages and injunctive relief requiring Continental to revise its policies to comply with the ACAA.

Tunison's claims for punitive and injunctive relief were dismissed by the district court at the summary judgment stage. Her claim for compensatory damages proceeded to trial. On August 13, 1997, Continental submitted an offer of judgment for $1,000 pursuant to Fed. R. Civ. P. 68. Tunison did not accept this offer. After trial, the jury returned a special verdict finding that Continental had violated the ACAA on each of the three flights on which it had required

an attendant. However, the jury awarded Tunison no damages. The court entered judgment for Tunison, with no damages.

Both Tunison and Continental filed Bills of Costs. The district court concluded without discussion that Ms. Tunison was the prevailing party for the purposes of Fed. R. Civ. P.

_____

800 (5th Cir. 1991); Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 570 (8th Cir. 1989).

2 The pertinent regulation, 14 C.F.R. s 382.35, reads in relevant part as follows:

> (a) Except as provided in this section, a carrier shall not require that a qualified individual with a disability travel with an attendant as a condition of being provided air transportation....
>
> (b) A carrier may require that a qualified individual with a disability meeting any of the following criteria travel with an attendant as a condition of being provided air transportation, if the carrier determines that an attendant is essential for safety:
>
>     * * *
>     (4) A person who has both severe hearing and severe vision impairments, if the person cannot establish some means of communication with carrier personnel, adequate to permit transmission of the safety briefing required by 14 CFR 121.571(a)(3) and (a)(4) or 14 CFR 135.117(b).

54(d)(1), then considered the effect of the offer of judgment under Fed. R. Civ. P. 68. The court reasoned that while the $1,000 offer of judgment was more than the damages awarded ($0), the appropriate comparison was between the offer amount and the damages awarded plus pre-offer costs. Since Tunison's pre-offer costs were $1,788.70, the court concluded that the offer of judgment was not more than the ultimate award. Hence Tunison was awarded both pre-and post-offer costs, totaling $3,190.85. Continental appeals from this award of costs.

## II. The Prevailing Party Determination

Rule 54(d)(1) provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." In its order regarding costs in this case, the district court quoted Rule 54(d)(1), but did not pause to discuss who was the prevailing party. Instead, the court simply noted that "the jury found in favor of Tunison," and then proceeded to treat her as the prevailing party in analyzing the Rule 68 issues.

Tunison argues that she was a prevailing party because she was the "judgment winner." This approach to the prevailing party determination is not without support. Wright and Miller note that "[u]sually the litigant in whose favor judg-

ment is rendered is the prevailing party for purposes of Rule 54(d)." 10 Wright, et al., Federal Practice and Procedure s 2667, at 204 (1998). Tunison has cited several cases with language suggesting that a party who receives a judgment is considered prevailing under Rule 54(d)(1). See, e.g., K-2 Ski Co. v. Head Ski Co., 506 F.2d 471, 477 (9th Cir. 1974); Green Constr. Co. v. Kansas Power & Light Co., 153 F.R.D. 670, 674 (D.Kan.1994). However, with the exception of one district court decision, the cases Tunison cites did involve some relief, and hence did not test whether a judgment alone is enough. See Mary M. v. North Lawrence Community Sch. Corp., 951 F.Supp. 820, 828 (S.D. Ind.) (finding party to be prevailing

despite the fact that no damages were awarded), rev'd on other grounds, 131 F.3d 1220 (7th Cir. 1997).

Continental argues that Tunison is not prevailing by relying on Supreme Court cases regarding who is a prevailing party entitled to attorneys' fees under 42 U.S.C. s 1988. Tunison questions the relevance of these attorneys' fees cases to the prevailing party issue under 54(d). While there may be reason in some cases to construe the term "prevailing party" differently depending on whether attorneys' fees or only costs are at issue, see Friends for All Children, Inc. v. Lockheed Aircraft Corp., 725 F.2d 1392 (D.C. Cir. 1984), we agree with Continental that the "prevailing party" determination is generally the same in the two contexts. See Farrar v. Hobby, 506 U.S. 103, 119 (1992) (O'Connor, J., concurring) (pointing out that attorneys' fees under s 1988 are awarded "as part of the costs," and thus suggesting that the prevailing party standard for s 1988 and 54(d) are the same); Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1180 n.1 (Fed. Cir. 1996) ("[T]he meaning of prevailing party is the same in either context."); Institutionalized Juveniles v. Secretary of Pub. Welfare, 758 F.2d 897, 926 (3d Cir. 1985) ("The use of the same test will appropriately simplify the litigation of disputes concerning cost and fee awards."); Studiengesellschaft Kohle mbH v. Eastman Kodak Co., 713 F.2d 128, 132 (5th Cir. 1983) (s 1988 case has applicability in 54(d) case because both require determination of who is prevailing party). See also Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983) (noting in s 1988 case that the "standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party' ").

The Supreme Court has consistently required that to be considered a prevailing party under s 1988, a party must receive some affirmative relief. In Hewitt v. Helms, 482 U.S. 755, 760 (1987), the Court observed that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." In Rhodes v. Stewart, 488 U.S. 1, 4 (1988), the

Court refused to award prisoners attorneys' fees even though the prisoners obtained a declaratory judgment against prison officials, noting that a declaratory judgment will only constitute relief for the purposes of s 1988 where it "affects the behavior of the defendant toward the plaintiff."  In Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 792 (1989), the Court concluded that to be considered the prevailing party under s 1988, the plaintiff "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."

     The decision in Farrar v. Hobby, 506 U.S. 103 (1992), is particularly instructive.  In that case, the Court considered whether a civil rights plaintiff who receives nominal damages is a prevailing party eligible to receive attorneys' fees under 42 U.S.C. s 1988.  The Court concluded that while such a party was "prevailing," the attorneys' fee award could appropriately be quite low, based on the degree of the plaintiff's overall success.  The Court held that to qualify as a prevailing party under s 1988, a plaintiff "must obtain an enforceable judgment against the defendant from whom fees are sought."  Id. at 111.  The award of nominal damages, the Court concluded, was such an enforceable judgment, because "[a] plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars." Id. at 113.  The Court made clear, however, that " 'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status."  Id. at 112 (quoting Hewitt, 482 U.S. at 762).

     Unlike the award of nominal damages at issue in Farrar, a judgment with no damages at all is not an "enforceable judgment"--there is simply nothing to enforce.  While an empty judgment may provide some moral satisfaction, such a judgment carries no real relief and thus does not entitle the judgment winner to be treated as a prevailing party.  See Robinson v. City of St. Charles, 972 F.2d 974, 976 (8th Cir. 1992) (holding that unlike a civil rights plaintiff receiving nominal damages, a plaintiff receiving no damages is not a prevailing party simply because a violation was demonstrat-

ed); Nissim v. McNeil Consumer Prod. Co., 957 F.Supp. 604, 607 (E.D. Pa. 1997) (holding that where the jury found in favor of plaintiff on Title VII discrimination and retaliatory discharge claims but awarded no back pay or compensatory damages, plaintiff was not prevailing). Cf. Johnson v. Eaton, 80 F.3d 148, 150 (5th Cir. 1996) (where plaintiff demonstrated a violation of the Fair Debt Collection Practices Act but did not prove damages, she was not entitled to attorneys' fees under the statute which required a "successful action to enforce the [claimed] liability"); PH Group Ltd. v. Birch, 985 F.2d 649, 652 (1st Cir. 1993) (where jury found that defendant breached implied covenant of good faith and fair dealing but awarded plaintiff zero damages, plaintiff was not a "prevailing party" entitled to attorneys' fees under agreement between licensor and licensee).

Tunison does not claim to have demonstrated any "material alteration of the legal relationship" between herself and Continental. See Texas State Teachers Ass'n, 489 U.S. at 792. Instead, Tunison argues that we should remand in order for her to demonstrate that her lawsuit was the impetus for changes in Continental's policies. We need not decide whether such a demonstration, if made, would have entitled Tunison to be considered the prevailing party. If such a change in policies is relevant to the question now, it was also relevant earlier. Tunison's proffer is too far outside the record. We therefore conclude that Tunison is not a prevailing party presumptively entitled to costs under Rule 54(d)(1).3

We also conclude that Continental has not established any right to be treated as the prevailing party. Although in the bulk of cases, there will be a prevailing party for Rule 54 purposes, a number of courts have recognized that this need not always be the case. In Schlobohm v. Pepperidge Farm, 806 F.2d 578 (5th Cir. 1986), for example, a franchisee and franchisor arbitrated the value of the franchise pursuant to

---

3 Conceivably the verdict against Continental on the liability issue might work an issue preclusion in some future litigation, but that theoretical possibility does not make Tunison a prevailing party in the present case, in which she has obtained no identifiable relief.

---

contract. The district court confirmed the arbitrator's determination, and held the franchisee to be the prevailing party. The Fifth Circuit held that neither party was prevailing under Rule 54, noting that the arbitrator's award was more than what the franchisor offered, but significantly less than what the franchisee requested. Cf. Hohensee v. Basalyga, 50 F.R.D. 230 (M.D. Pa. 1969) (no prevailing party in a quiet title action); Northbrook Excess v. Proctor & Gamble, 1989 WL 65156 (N.D. Ill.) (no prevailing party in commercial dispute where each party required to bear certain losses). Courts have also found no party prevailing for the purposes of awarding costs in situations involving a claim and a counterclaim, and recovery on neither. See, e.g., Srybnik v. Epstein, 230 F.2d 683 (1956); Magee v. McNany, 11 F.R.D. 592 (W.D. Pa. 1951). Cf. Lovejoy v. O'Berto, 1987 WL 27415

(N.D. Ill.) (where recovery on plaintiff's claim partially offset by recovery against him on counterclaim, court finds no prevailing party); All West Pet Supply v. Hill's Pet Products, 153 F.R.D. 667 (D. Kan. 1994) (awarding no costs where each party prevailed on some claims).

In Watchorn v. Town of Davie, 795 F.Supp. 1112 (S.D. Fla. 1992), the court addressed a cost award in a factual situation similar to that here. In that case, an arrestee brought a s 1983 action, and won only a zero dollar verdict in his favor. The court first concluded that the arrestee was not prevailing for purposes of attorneys' fees. Defendants asserted that they should be entitled to costs under Rule 54(d). The court refused to award the defendants' costs, and instead awarded no costs, noting the "slight, though de minimis, success" of the plaintiff.

In this case, Continental was found to have violated the Air Carrier Access Act on three separate occasions, and had judgment entered against it. It has cited no case in which a party against whom judgment was entered was held to be prevailing, and has suggested no justification for such a treatment. Thus on the facts of this case, we hold that neither party has established that it is a prevailing party presumptively entitled to costs under Rule 54(d)(1).

III. Post-Offer Costs and Rule 68

A. Comparison of the Offer and the Judgment Obtained

We must now determine what application, if any, Rule 68 has in this case. The Rule provides in relevant part that

> a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed. R. Civ. P. 68.

Here, Continental offered that "a judgment may be taken against it, and in favor of plaintiff, on all claims in the above-captioned case in the amount of One Thousand Dollars ($1,000)." Given our holding that Tunison was not prevailing under Rule 54(d)(1), she should not have been awarded any costs. Accordingly, the Rule 68 comparison should have been between the amount finally obtained ($0) and the amount of the offer. Thus on any interpretation of the offer, the offer was more favorable.

Because it viewed Tunison as a prevailing party entitled to costs under Rule 54(d)(1), the district court's treatment of the Rule 68 comparison was more complicated. The court reasoned that while $1,000 was clearly more than the $0 damage award, the appropriate comparison was to the damage award plus Tunison's pre-offer costs of $1,788.70. Thus the court concluded that the offer of judgment was for less than the amount finally awarded. The approach used by the district court would be correct if the offer of judgment on "all claims" were for $1,000 total, including costs. In such a situation, since the offer includes pre-offer costs, the amount of judgment used for comparison must include pre-offer costs as well, if they are to be awarded. See Goos v. National Ass'n of Realtors, 68 F.3d 1380, 1382 n.1 (D.C. Cir. 1995). However, the district court failed to inquire into whether the offer of judgment on "all claims" should in fact be interpreted as including costs.

The starting point for determining whether a Rule 68 offer should be viewed as including costs is Marek v. Chesny, 473 U.S. 1 (1985). The Court there sanctioned the use of "lump sum" offers, holding that a defendant need neither include a specific amount for costs nor leave the amount of costs to be specified by the court, but may instead simply specify the total amount of the offer. The Court provided guidance regarding whether such an offer would be viewed as including costs

> [i]f an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs

>      is not specified, the court will be obliged by the terms of
>      the Rule to include in its judgment an additional amount
>      which in its discretion it determines to be sufficient to
>      cover the costs.

Id. at 6 (internal citations omitted).

Tunison argues that Continental's offer on "all claims" should be interpreted as including costs. Plaintiff cites Blumel v. Mylander, 165 F.R.D. 113, 116 (M.D. Fla. 1996), where an offer "to settle all pending claims" was construed as being inclusive of costs.  At a minimum, Tunison argues that the offer was ambiguous, and should therefore be construed against the drafter, which in this case means construing the offer as being inclusive of costs.  However, given the language of Marek, "all claims" is not ambiguous.  The Supreme Court provided that "if the offer does not state that costs are included," they will be added.  Marek, 473 U.S. at 6.  The "all claims" language used in Continental's offer does not specify anything at all about costs, and therefore cannot be read to include costs.  Had the offer been accepted, a court would have been compelled by Marek to treat the offer as one for $1,000 plus costs then accrued.  See Webb v. James, 147 F.3d 617 (7th Cir. 1998) (where lump-sum Rule 68 offer did not mention costs, court required payment of an additional amount, notwithstanding offeror's post-acceptance insistence that he meant the offer to be all inclusive).  There is no

justification for interpreting the offer differently because it was rejected. We therefore conclude that the offer was for $1,000 plus pre-offer costs. Thus even under the district court's conclusion that Tunison should be awarded costs under Rule 54(d)(1), the appropriate comparison under Rule 68 would have been between $1,000 plus pre-offer costs and $0 plus pre-offer costs. Hence the offer was more favorable than the ultimate award.

B. Applicability of Rule 68 to Defendant's Costs

Having concluded that Continental's offer of judgment was more favorable than the amount finally obtained by Tunison, we consider what application Rule 68's cost-shifting provision has in this case. Because we have concluded that Tunison did not prevail under Rule 54(d)(1), on remand, she will not be entitled to any of her costs. Thus to the extent that Rule 68 merely limits the costs which a plaintiff may be awarded where she has turned down a more favorable offer, the Rule has no application, since Tunison is entitled to no costs in any case.

The issue argued to us is whether Rule 68, in addition to limiting the costs that can be recovered by a plaintiff who has rejected a more favorable offer, requires such a plaintiff to pay the offeror's post-offer costs. Rule 68 provides that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Continental argues that the Rule's language requires a plaintiff who fails to receive a judgment more favorable than a previously rejected offer to pay all post-offer costs, including the offeror's, and that Tunison is therefore required to pay Continental's costs incurred after the offer of judgment was made. Tunison argues that the Rule's prescription that the offeree pay "the costs incurred after the making of the offer" should be read as requiring only payment of the "offeree's costs," despite the absence of any limiting language in the Rule. We have not squarely faced this issue before, but have noted in dicta that "if the plaintiff declines the offer or allows it to expire, he runs the risk of paying the defendant's subsequent costs of

trial." Richardson v. National R.R. Passenger Corp., 49 F.3d 760, 762 (D.C. Cir. 1995). Several circuits have held that Rule 68 does shift a defendant's costs. See Crossman v. Marcoccio, 806 F.2d 329 (1st Cir. 1986); O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1117-18 (8th Cir. 1989); Knight v. Snap-On Tools Corp., 3 F.3d 1398, 1405 (10th Cir. 1993). See also Dual v. Cleland, 79 F.R.D. 696, 697 (D.D.C. 1978). Tunison cites no case to the contrary.

Tunison's reading of Rule 68 is not only unsupported by the language of the Rule, it is inconsistent with 1938 Advisory Committee Notes to the original enactment of Rule 68, which cited three state statutes as illustrations of the operation of the Rule. See Delta Air Lines, Inc. v. August, 450 U.S. 346, 356-58 (1981). Both the Minnesota and Montana statutes cited by the Committee Notes explicitly provided for payment of the defendant's costs, while the New York statute used wording similar to that in Rule 68. See 2 Minn. Stat. s 9323 (Mason 1927); 4 Mont. Rev. Code Ann. s 9770 (1935); N.Y. Civ. Prac. Law s 177 (Cahill 1937).

Tunison argues that if a defendant's costs can be shifted, defendants will have little reason to minimize their post-offer litigation costs. This argument is wholly unconvincing. A defendant will not know at the time its costs are incurred that the costs can be shifted to the plaintiff, because the defendant will not know what judgment, if any, the plaintiff will obtain. Indeed, interpreting Rule 68 to require payment of a defendant's costs where the judgment obtained by the plaintiff is less favorable than an earlier offer simply requires the plaintiff to be responsible for all costs accrued as a result of his own decision to reject the offer. This is entirely consistent with Rule 68's purpose of encouraging settlement, as it enhances both defendants' incentive to extend Rule 68 offers and plaintiffs' incentive to accept them. Crossman, 806 F.2d at 332.

C. The Delta Air Lines Case

As a final matter, we note that the shifting of Continental's post-offer costs to Tunison in this case is not precluded by Delta Air Lines, Inc. v. August, 450 U.S. 346 (1981). In that case, defendant Delta Air Lines had prevailed in a Title VII claim against it by a former employee, but the district court, exercising its discretion under Rule 54(d)(1), had directed that each party bear its own costs. Delta argued that because the plaintiff had refused a $450 offer of judgment, the award of Delta's post-offer costs was mandatory under Rule 68. The Court disagreed, and held that the district court retained its Rule 54(d)(1) discretion regarding all of Delta's costs. The Court did not suggest that Rule 68 did not apply to shift a defendant's costs in any case, but instead reasoned that since Rule 68's mandatory cost-shifting provisions are triggered only when "the judgment finally obtained by the offeree is not more favorable than the offer," the Rule did not apply when the offeree did not obtain a judgment at all. Id. at 347-48, 352. As Justice Powell's concurrence

noted, the Court's holding implies that "a defendant may obtain costs under Rule 68 against a plaintiff who prevails in part but not against a plaintiff who loses entirely." Id. at 362 (Powell, J., concurring).

Given Rule 68's reference to "the judgment finally obtained by the offeree," the Delta Court was understandably hesitant to apply the Rule in a situation where the judgment was entered in favor of the defendant. Justice Rehnquist argued in dissent that even when a plaintiff fails altogether, he essentially "obtains" a "take nothing" judgment, and thus urged that such situations were within Rule 68. Id. at 370-71 (Rehnquist, J., dissenting). The Court, however, disagreed, reasoning that applying Rule 68 in such a situation would transform the district judge's discretionary award of costs under Rule 54 into a mandatory award of post-offer costs under Rule 68, an outcome the Court considered unacceptable. Id. at 353.

The concerns which precluded Rule 68's application in Delta are inapplicable in the present case. In contrast to the situation in Delta, the judgment here was for Tunison, the offeree. Thus there was a "judgment finally obtained by the offeree," and this situation is squarely within the language of the Rule. Furthermore, unlike in Delta, application of Rule 68 in this case does not strip the district court of any Rule 54

discretion in awarding defendant costs. Indeed, Rule 54 would provide the district court no basis for awarding Continental its pre- or post-offer costs, since Continental is not a prevailing party for Rule 54 purposes.

This is not a situation in which damages were clear and the real question was liability, so that the offer of judgment served to interfere inappropriately with the district court's Rule 54 discretion after a finding of no liability. Indeed, as illustrated by the jury's finding of zero damages, the case for damages was uncertain. In such a case, where a plaintiff's case for damages is weak, encouraging a plaintiff to carefully consider an offer of judgment is particularly important, and application of Rule 68's cost-shifting provisions effectuates that purpose. Because application of Rule 68 here is consistent with the language and purpose of the Rule, we conclude that Rule 68 applies to shift Continental's costs. Thus on remand, the district court's award of Continental's allowable post-offer costs is mandatory.

## IV. Conclusion

The district court erred in treating Tunison as the prevailing party under Rule 54(d)(1) despite the lack of any enforceable judgment in her favor. Furthermore, because Tunison failed to obtain a more favorable judgment than the offer of judgment she rejected, Rule 68 mandates that she pay Continental's post-offer costs. We therefore reverse the award of costs to Tunison and remand to the district court for a determination and award of Continental's allowable post-offer costs.